UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY USANOVIC, | CASE NO. C23-0687JLR |
| Plaintiff, | ORDER |
| v. | PROVISIONALLY FILED UNDER SEAL |
| EXP REALTY LLC, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Plaintiff Kelly Usanovic's motion to certify class.  (MCC (Dkt. ## 59 (sealed), 57 (redacted)); MCC Reply (Dkt. # 71).)  Defendant eXp Realty LLC ("eXp") opposes the motion.  (MCC Resp. (Dkt. ## 69 (sealed), 68 (redacted).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing law.  Being fully advised, the court GRANTS Ms. Usanovic's motion to certify class.

ORDER - 1

## II.   BACKGROUND

Ms. Usanovic brings this class action suit for declaratory and injunctive relief and an award of statutory damages in response to real estate brokerage firm eXp's alleged violation of the Telephone Consumer Protection Act ("TCPA").  47 U.S.C. § 227; (Compl. (Dkt. # 1) at 1, 3.)  She alleges that eXp directed its agents to place unsolicited calls to the telephone numbers of consumers who are registered on the National Do Not Call Registry ("NDNCR"),"including those consumers who requested for the calls to stop[.]"  (*Id.* at 1-2.)

### A.   The TCPA

The TCPA, as is pertinent here, prohibits making telemarketing calls to residential telephone subscribers who have registered their telephone numbers on the NDNCR.  *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).  Persons who have registered their numbers on the NDNCR who receive more than one telemarketing call in a 12-month period "by or on behalf of the same entity" have a private right of action.  *See* 47 U.S.C. § 227(c)(5).  An entity can "make" a call under the TCPA directly or vicariously through an agency relationship with the person who made the call.  *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014).  Thus, "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Id*. at 879.  The TCPA imposes up to $500 in statutory damages per violation and provides for treble damages if the entity acted "willfully or knowingly."  47 U.S.C. § 227(c)(5).

## B.    eXp's Telemarketing Campaign

eXp is a real estate brokerage firm that facilitates residential and commercial real estate transactions.  (MCC, Ex. 1[1] (Bastian Depo.)[2] (Dkt. # 59-1) at 4.)  eXp contracts with thousands of real estate agents across the country to identify and contact leads, or prospective customers, for residential sales.  (*Id*. at 39-40 (estimating that eXp has in excess of 80,000 real estate agents globally and 50-60,000 agents in the United States).)  eXp enters into a form independent contractor agreement with each agent (MCC, Ex. 2 (Mabery Depo.)[3] (Dkt. # 66) at 54; Bastian Depo. at 18); provides each agent with training (*see, e.g.*, Mabery Depo. at 13, 15 (describing training and eXp University)); and provides support to each agent to help the agent grow their business (*see id*. at 8-9 (describing the support eXp provides to its agents)).

---

[1] The court expresses its profound frustration with the disorderly presentation of the exhibits accompanying the parties' briefing on the motion for class certification.  Ms. Usanovic's exhibits are spread across five docket entries (*see* Dkt. ## 57, 59, 60, 61, 66) and the docket numbers for her exhibits are not consistent between the sealed and redacted versions of her motion.  As a result, the court spent an inordinate amount of time searching for and ensuring accurate citations for Ms. Usanovic's exhibits.  Similarly, the docket numbers for eXp's exhibits are not consistent between the sealed and redacted versions of its opposition.  This conduct is prejudicial to the administration of justice; has resulted in a significant waste of judicial time and resources; and will not be tolerated in the future.  Counsel are instructed to file exhibits as attachments to an authenticating declaration rather than as direct attachments to their briefs, and they shall ensure, with placeholders if necessary, that the docket numbers are consistent between sealed and redacted versions of their exhibits.  Failure to do so will result in the court striking briefs and exhibits that do not comply with these instructions and may result in further sanctions.

[2] The court notes that the parties did not highlight the portions of the deposition transcripts that they referred to in their pleadings as required by Local Civil Rule 10(e)(10).  *See* Local Rules W.D. Wash. LCR 10(e)(10) ("All exhibits [submitted in support of or in opposition to a motion] must be marked to designate testimony or evidence referred to in the parties' filings.").  The court directs the parties' counsel to review the local rules regarding marking exhibits before making any further filings.

[3] Both parties have submitted excerpts from Ms. Mabery's deposition.  (*See, e.g.*, MCC, Ex. 1 (Dkt. # 59-1); MCC Resp., Ex. 2 (Dkt. # 69-2); Mabery Depo. (Dkt. # 66).)  For ease of reference, the court cites directly to the page number of the deposition.

ORDER - 3

Through training provided by eXp University, eXp directed its agents to cold call the owners of expired and for sale by owner ("FSBO") listings.  (*See, e.g.*, MCC, Ex. 4 (Garcia Depo.) (Dkt. # 60) at 11-12, 131-32 (so directing and describing the nature of such trainings), 116-19 (explaining that eXp provides agents with scripts, leads, and systems to cold call prospective customers); Garcia Depo., Ex. 14 (Dkt. # 60 at 266-84) (Goswitz Training) (providing an example of the eXp University training).)  Some of the training failed to warn against calling numbers on the NDNCR.  (*See, e.g.*, Garcia Depo. at 119-20 (so testifying).)

eXp agents used dialer products tailored for the real estate industry to effectuate the firm's directive to solicit residential listings from consumers with whom they had no prior relationship.  (*See, e.g.*, MCC, Ex. 9 (Mangold Depo.) (Dkt. # 59-7) at 6-9 (describing Mojo's dialing and telemarketing support services); *id*. at 7-8 (stating that Mojo provides dialing services, a lead management system, and customer contact information).)  Five companies sold predominately "expired leads" or "for sale by owner leads" to eXp agents: Mojo, Vulcan7, RedX, My Plus Leads, and All The Leads.  (*Id*. at 37-38 (Mojo); MCC, Ex. 10 (Yandell Depo.) (Dkt. # 57-10) at 7-12 (All The Leads); MCC, Ex. 11 (Fenn Depo.) (Dkt. # 59-8) at 5-13 (RedX); MCC, Ex. 12 (Judd Depo.) (Dkt. # 59-9) at 7, 18, 28 (Vulcan7); MCC, Ex. 13 (Pope Depo.) (Dkt. # 59-10) at 6-11 (My Plus Leads).)  Mojo, Vulcan7, and RedX also sold dialers that eXp agents could use to call the leads.  (Mangold Depo. at 37-39; Judd Depo. at 7-16, 18, 28; Fenn Depo. at 5-13.)  Between May 10, 2019, and December 31, 2024, approximately 3,500 eXp agents used Mojo or Vulcan7 services.  (*See* Mangold Depo. at 16; Judd Depo. at 17.)  eXp

ORDER - 4

agents made nearly 48 million calls using Mojo's dialer during this same period.  (*See* Mangold Depo. at 19.)

**C.      eXp Agent Calls to Ms. Usanovic**

On June 25, 2005, Ms. Usanovic registered her telephone number (ending in "6113") on the NDNCR.  (Compl. ¶¶ 20-21.)  She later listed a property for sale on the Multiple Listing Service using an agent who was not affiliated with eXp.  (*Id*. ¶ 23.)  That listing expired in February 2023 and, according to Ms. Usanovic, soon thereafter she received "a flood of unsolicited solicitation calls" from real estate agents.  (*Id*. ¶ 24.)  Ms. Usanovic alleges that between February 14 and February 17, 2023, she received a total of 13 unsolicited and unwelcome calls to her cell phone from four different eXp agents.  (*Id*. ¶¶ 20-38; *see also* MCC at 14 (citing Mangold Depo. at 13-15 (Mojo); Judd Depo. at 19-20 (Vulcan7)) (contending that at least five agents had purchased lead lists that included Ms. Usanovic's telephone number as an expired lead resulting in at least 10 calls to her telephone number in February 2023 using the Mojo and Vulcan7 dialers).)  Ms. Usanovic further alleges that eXp's conduct harmed her in the form of "mental distress, annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware [] and the consumption of memory on the phone."  (Compl. ¶ 37.)  Mojo and Vulcan7 call logs show that eXp agents Igor Li, Carlos Mezquitan, Ali Shahrokhi, and John Crose called Ms. Usanovic during this period.  (*See id*. ¶¶ 25-38 (detailing the date, time, and eXp agent associated with each call to Ms. Usanovic).)

**D.      Ms. Usanovic's Class Action**

On May 10, 2023, Ms. Usavonic filed the instant complaint alleging a violation of the TCPA and seeking declaratory and injunctive relief as well as statutory damages. (*See generally* Compl).  On November 21, 2025, Ms. Usanovic moved to certify the following class under Federal Rule of Civil Procedure 23(b)(3):

> All persons in the United States who from May 10, 2019 through September 30, 2023 (1) received more than one call made by eXp Realty agents (2) using a Mojo or Vulcan7 dialer (3) as a result of being obtained as a lead from Mojo, Vulcan7, RedX, My Plus Leads, or All The Leads, (4) within any 12-month period, (5) where the person's telephone number had been on the [NDNCR] for at least thirty days.

(MCC at 17.)

Ms. Usanovic's motion for class certification relies in part on the expert report of Anya Verkhovskaya, President and Chief Executive Officer of Class Experts Group, LLC (MCC, Ex. 24 (AV Report) (Dkt. # 59-17) ¶ 12.)  After Ms. Usanovic filed her motion, eXp moved to exclude Ms. Verkhovskaya's testimony.  (*See generally* MTE (Dkt. # 67).) On February 26, 2026, the court denied eXp's motion to exclude, finding that eXp's concerns about Ms. Verkhovskaya's methodology and conclusions go to the weight, but not the admissibility of the evidence.  (*See generally* 2/26/26 Order (Dkt. # 74).)  Ms. Usanovic's motion for class certification is now fully briefed and ripe for the court's consideration.

### III.      ANALYSIS

The court first sets forth the relevant legal standard before turning to the parties' substantive arguments.

ORDER - 6

**A.   Class Certification Legal Standard**

As the party seeking certification, Ms. Usanovic bears the burden of showing, by a preponderance of the evidence, that the requirements of Federal Rule of Civil Procedure 23 are met for the proposed class. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022).  Under Rule 23(a), Ms. Usanovic must first show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  If she satisfies Rule 23(a), Ms. Usanovic must then show that the proposed class fits into one of the three categories listed in Rule 23(b). *Olean Wholesale Grocery Coop.*, 31 F.4th at 663.  Because Ms. Usanovic seeks to certify a damages class, she relies on Rule 23(b)(3), which requires her to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently  adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  As a general rule, the merits of a claim "may be considered [at class certification] only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied[.]" *Olean Wholesale Grocery Coop.*, 31 F.4th at 667 (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)) (internal quotation marks omitted and cleaned up).  Ultimately, the decision of whether to certify a class is entrusted to the discretion of the district court. *See id.* at 663.

**B.      Rule 23(a) Is Satisfied.**

The court considers each of Rule 23(a)'s requirements in turn.

1.  Numerosity (Rule 23(a)(1))

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties stipulated to numerosity. (7/11/24 Order (Dkt. # 40) (granting the stipulation).) Numerosity is therefore satisfied.

2.  Commonality (Rule 23(a)(2))

Rule 23(a)(2) requires the plaintiff to show that there are questions of law or fact that are common across the class. Fed. R. Civ. P. 23(a)(2). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop.*, 31 F.4th at 666-67 (emphasis in original). To satisfy Rule 23(a)(2), "'[e]ven a single common question' will do[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (simplified and citation omitted).

Ms. Usanovic asserts that the following questions are common throughout the class:

- Did eXp agents make calls to [NDNCR] numbers?
- Were the calls telemarketing?
- Did class members consent to receive those calls?
- Should class members recover statutory damages on a per TCPA violation basis?
- Is eXp vicariously liable for its agents' violative calls and the resulting statutory damages?

ORDER - 8

(MCC at 19.)  Ms. Usanovic further asserts that she can use common, class-wide evidence to resolve these questions and to show that eXp instructed its agents to indiscriminately call residential consumers and failed to act to prevent TCPA violative calls it knew or should have known its agents were making.  (*Id*. at 19-20.)  Such evidence includes Ms. Verkhovskaya's report, testimony about the leads and dialers used by eXp agents, eXp's standardized agent training, standardized policies, and other materials eXp provided to agents.  (*Id*.)

In response, eXp contends that Ms. Usanovic cannot demonstrate commonality because "the critical issue in this case, vicarious liability," and the elements of the TCPA claim cannot be established with class-wide proof.   (MCC Resp. at 1.)  The court concludes that Ms. Usanovic satisfies Rule 23(a)(2).

### a.  Vicarious Liability

Ms. Usanovic asserts that common evidence will establish eXp's vicarious liability for its agents' TCPA violative calls and advances apparent authority, actual authority, and ratification theories of liability in her motion papers.  (MCC at 20 (asserting that form contracts, standardized policies and procedures, and other evidence show that eXp had "the same relationship with all eXp agents," had authority over such agent's solicitation of business, and that such agents were "representatives" of eXp).)  In response, eXp asserts that, in TCPA cases such as this one, "it is well-settled that the issue of various liability cannot be resolved by common evidence[.]"  (MCC Resp. at 11.) The court agrees with Ms. Usanovic.

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Hollis v. Exp Realty LLC*, No. C25-0822JLR, 2025 WL 2711424, at *3 (W.D. Wash. Sept. 23, 2025) (citing *Gomez*, 768 F.3d at 879). Vicarious liability must be based upon at least one of the following theories: (1) apparent authority, (2) actual authority, or (3) ratification. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018).

"Apparent authority exists only as to those to whom the principal has manifested that an agent is authorized." *Thomas v. Taco Bell Corp.*, 582 F. App'x. 678, 679 (9th Cir. 2014) (quoting Restatement (Second) of Agency § 265 cmt. *a* (1958)). To establish that a third party acted with apparent authority, the plaintiff must show that "a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471, at *2 (9th Cir. Apr. 5, 2022) (quoting Restatement (Third) of Agency § 2.03 (2006)). It is well-settled that entities may be liable for the acts of third-party telemarketers undertaken pursuant to agreement with the entity for commercial benefit. *See, e.g.*, *Hollis*, 2025 WL 2711424 at *3 n4. ("[W]e see no reason that a seller should not be liable . . . for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised.")

"Actual authority is limited to actions specifically mentioned to be done in a written or oral communication or consistent with a principal's general statement of what the agent is supposed to do." *Jones*, 887 F.3d at 449 (simplified and quoting *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017)).  Courts that have considered TPCA class actions sometimes construe "specific, detailed training and materials," from the broker to third-party agents as evidence that such agents had actual authority to make TCPA violative calls.  *See Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *6 (M.D.N.C. July 22, 2020) (Restatement (Third) of Agency § 2.01 (2006)); *see also id* at *5 ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.").

"'Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.'" *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (reversing and remanding a district court's grant of summary judgment on the grounds that a reasonable jury could find that defendants potentially ratified a debt collector's TCPA violative calling practices) (citation omitted).  Ratification of a third party's acts results from the "knowing acceptance of the benefit" of a third party's actions or through willful ignorance.  *Id*. (internal quotation marks omitted).  Thus, even if there is no evidence that a real estate brokerage firm had knowledge of any specific calls made by its agents, the firm is not shielded from liability.  *Id*. at 1075 (holding that a principal can ratify its

ORDER - 11

agents' conduct through willful ignorance where it "had knowledge of facts that would have led a reasonable person to investigate further").

eXp cites *Chinitz v. NRT West, Inc.*, to support its contention that it is "well-settled" that vicarious liability cannot be established by common evidence in TCPA class actions. No. 18-CV-06100-NC, 2019 WL 4142044, at *5 (N.D. Cal. Aug. 30, 2019). *Chinitz v. NRT West, Inc.*, however, supports no such conclusion. In that case, plaintiff alleged that common evidence showing that the brokerage firm controlled "the manner and means of its associates' work" and that the associates had "apparent authority" proved the firm's vicarious liability. *Id*. at *4. The *Chinitz v. NRT West, Inc.* court disagreed and determined that, although whether an agency relationship existed "is ostensibly a common question[,]" the plaintiff had "not provided sufficient evidence showing that the proposed class wide proceeding [had] the capacity to generate common *answers*." *Id*. at *5 (cleaned up and citation omitted) (emphasis in original). Specifically, the court held that, because the defendant brokerage firm likely exerted "different levels of supervisory control over its associates, such that it is vicariously liable for the actions of some associates, but not others[,]" plaintiff had not shown that vicarious liability could be proven with class-wide evidence. *Id*. ("In short, [plaintiff] has identified common questions, but has not shown by a preponderance of evidence that common answers exist to those questions."). As a result, the court concluded that the plaintiff failed to establish commonality. *Id*.

The cases Ms. Usanovic cites provides an illustrative contrast. First, Ms. Usanovic relies on *Bumpus v. Realogy Brokerage Grp. LLC* to support her contention

that common evidence will establish eXp's "systematic ratification of its agents' conduct in a single, class-wide stroke." (MCC Reply at 2 (citing *Bumpus*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *7 (N.D. Cal. Mar. 23, 2022)).) *Bumpus* addressed certification of a class where plaintiffs alleged that common evidence would prove vicarious liability because the real estate firm ratified its agents' TCPA violative calls. *Bumpus*, 2022 WL 867256, at *1. In finding that plaintiffs satisfied Rule 23(a)(2)'s commonality requirement as to vicarious liability, the *Bumpus* court credited that the common evidence showed the capacity to generate common answers. *Id*. at *8. Specifically, the court recognized common evidence showing that the real estate agents acted on behalf of the firm; made the calls while affiliated with the firm; assented to firm-wide policies and received training that encouraged cold-calling owners of expired and FSBO listings; and used commercial dialers and call lists with residential telephone numbers. *Id*. at *7-8. The court also credited common evidence showing that the firm "was willfully ignorant of its agents' violations" of its policies meant to comply with the TCPA. *Id*. at *7. Plaintiffs also employed Ms. Verkhovskaya's aggregate analysis and methodology to produce a list of TCPA violative calls. (*Id*. at *7 ("In addition to relying on [Ms.] Verkhovskaya's report to demonstrate that calls were made by Realogy agents while they were affiliated with [the brokerage firm] . . . plaintiffs say that they can prove the calls were made on behalf of Realogy based on Realogy's policies and training programs.") (cleaned up and internal citations omitted). Thus, on these bases, the *Bumpus* court held that plaintiffs show the potential of the common evidence to generate common answers and, consequently, that Rule 23(a)(2)'s requirement for commonality is satisfied.

ORDER - 13

Ms. Usanovic also cites *Chinitz v. Intero Real Est. Servs.*, which is another putative class action brought against a real estate firm accused of ratifying TCPA violative calls.  No. 18-CV-05623-BLF, 2020 WL 7391299, at *2 (N.D. Cal. July 22, 2020).  To establish vicarious liability, the plaintiff in that case similarly relied on Ms. Verkhovskaya's aggregate analysis showing a list of TCPA violative calls during the class period and fact that the real estate firm "provide[d] training to its sales associates, including in person, livestreamed, and pre-recorded trainings." *Id*. at *1, 5-6.  Plaintiff, in pertinent part, advanced actual authority and apparent authority theories of liability and asserted that "commonality is met because there are four questions with common answers that will drive the resolution of this case.  *Id*. at *8, 13.  The four questions are:

> (1) [W]hether [the brokerage firm's] California sales associates, or dialing services they engaged, called numbers on the NDNCR; (2) whether [the brokerage firm's] California operations failed to comply with the TCPA's internal do not call rules; (3) whether the telemarketing calls by [the brokerage firm's] California sales associates were intended to encourage the purchase of [the brokerage firm's] services; and [4] whether [the brokerage firm] is liable for the telemarketing conduct of its California sales associates.

*Id*. at *8.  In finding that Rule 23(a)(2)'s requirement for commonality is satisfied, the court reasoned that whether the agents had apparent authority depended on whether a reasonable person would believe that the agent who placed the call had authority to act on behalf of the brokerage firm.  *Id*. at *14.  "Because the inquiry is limited to how a reasonable person would perceive the calls at issue, there is no need to determine how individual class members perceived the calls. Agency, therefore, can be resolved on a class-wide basis." *Id*.  The court further held that Rule 23(a)(2) is permissibly constructed such that it can be satisfied with "even a single common question[.]" *Id*. at

ORDER - 14

*9 (citing *Dukes*, 564 U.S. at 359).  It is clear that the case currently before the court is far more similar to *Bumpus* and *Chinitz v. Intero Real Est. Servs.* than the cases cited by eXp.

Here, Ms. Usanovic has (1) provided a list of common questions that are very similar to the list of common questions put forward in *Chinitz v. Intero Real Est. Servs.* and (2) adduced evidence similar to the evidence provided in *Bumpus* showing the capacity to generate common answers to class wide questions, including those related to vicarious liability.  Specifically, Ms. Usanovic's common evidence demonstrates the capacity to generate common answers as to whether eXp (1) exerted the same level of supervisory control over all agents (*see* Mabery Depo. at 35 (describing that all agents are subject to one set of policies and procedures)); (2) actively encouraged indiscriminate telemarketing as a means of obtaining new listings (*see, e.g.*, Garcia Depo, Ex. 17 (Dkt. # 60 at 358-76) (███████████████████████) (promoting ███████████████ ████████); and (3) promoted technology and services that facilitated indiscriminate telemarketing without consent of the persons called (*see* ██████████████████ ████████ at 136 (promoting ███████████████████████████████ ████████████████ to obtain data for expired and canceled listings)).  eXp does not explain why this court should reach a different conclusion than did the *Bumpus* and *Chinitz v. Intero Real Est. Servs.* Courts.  (*See generally* MCC Resp.)  Therefore, the court rejects eXp's contention that vicarious liability "can only be resolved on a real estate agent-by-real estate agent, *and* call-by-call basis." (MCC Resp. at 11 (emphasis in original).)  Rather, the court agrees with Ms. Usanovic that she has met her burden to

ORDER - 15

show that whether eXp is vicariously liable under any theory for TCPA violative calls made by the eXp agents may be answered with class-wide evidence.

### b. TCPA Claim

Ms. Usanovic also asserts that common evidence will establish that eXp agents violated her rights and those of putative class members arising under the TPCA. (MCC at 19-20.) To prevail on a TCPA claim, Ms. Usanovic must show that, as to herself and putative class members, (1) each person is a residential telephone subscriber who had registered his or her number on the NDNCR and received at least two calls on behalf of eXp within a 12-month period; (2) eXp agents initiated the calls to such persons for telemarketing purposes; and (3) the persons did not consent to be called by the eXp agents. 47 U.S.C. § 277(c)(2), (5); 47 C.F.R. § 64.1200(c)(2), (d).

First, to demonstrate that the persons eXp agents called are residential telephone subscribers who had registered their numbers on the NDNCR and that such subscribers received at least two calls in a 12-month period, Ms. Usanovic relies on Ms. Verkhovskaya's aggregate analysis. (*See* MCC at 19.) Ms. Verkhovskaya analyzed Mojo and Vulcan7 records and identified more than 1,000 unique NDNCR numbers that received more than 3,000 TCPA violative calls by eXp agents between May 10, 2019, and September 30, 2023. (*See* AV Report ¶¶ 77-78, Ex. P (Residential NDNCR Records) (showing Ms. Verkhovskaya's list of 1,478 residential telephone numbers and 3,956 TCPA violative calls obtained from Vulcan7 and Mojo data).)

Second, to demonstrate that calls made by eXp agents were telemarketing, Ms. Usanovic relies on evidence pertaining to the commercial dialers used by eXp agents, the

ORDER - 16

type of leads the agents purchased, and the manner in which the agents employed the dialers and leads.  (MCC at 19; *see, e.g.*, Mangold Depo. at 8-10, 16-18 (testifying that, Mojo sells expired and FSBO leads and dialers that assist real estate agents with soliciting real estate listings from residential consumers without obtaining the consent of the person to be called).)  Commercial dialers are frequently used in the real estate industry to facilitate telemarketing.  (*See, e.g.*, Mangold Depo. at 6-8.)  According to Ms. Usanovic, eXp also promoted products to its agents that effectuate mass calling and directed its agents to use such products to reach potential customers.  (*See, e.g.*, Mabery Depo. at 23-24 (describing kvCORE, which eXp provides to all agents free of charge); Garcia Depo, Ex. 11 (Dkt. # 60 at 149-201) (████████████) at 162 (promoting cold-calling expired and FSBO listings as a means of succeeding as an eXp agent); Garcia Depo, Ex. 10 (Dkt. # 60 at 132-48) (███████████████████) at 136 (promoting ███████████████████████████ ████████ to obtain data for expired and canceled listings).

Third, to demonstrate that eXp agents' calls were non-consensual, Ms. Usanovic relies on (1) Ms. Verkhovskaya's aggregate analysis that excludes calls made to numbers obtained from a source other than Mojo, Vulcan7, RedX, My Plus Leads, and All The Leads, (*see* AV Report ¶ 54.b), and (2) testimony from those vendors explaining that they provide the contact information of residential telephone subscribers to agents without first obtaining the consent of the subscriber (*see, e.g.*, Mangold Depo. at 9-10, 38 (stating that Mojo does not claim to "have consent for any realtors to call those leads")).

ORDER - 17

Accordingly, the court concludes that Ms. Usanovic has satisfied her burden of showing that the elements of her claim can be proven with common evidence.

### c. Damages

Finally, to demonstrate that class-wide damages can be proven on a common basis, Ms. Usanovic again employs Ms. Verkhovskaya' aggregate analysis identifying the number of TCPA-violative calls made by eXp agents during the class period. (*See* AV Report ¶¶ 77-78; *see also* Residential NDNCR Records); *see also* 47 U.S.C. § 227(b)(3) (providing statutory damages for TCPA violations). Ms. Usanovic asserts that, given that one need only "multiply the statutory damages amount by the number of illegal calls[,]" such calculation is "formulaic[.]" (MCC at 20.) eXp does not contest the damages model provided by Ms. Usanovic. (*See generally* MCC Resp.)

On these bases, the court concludes that Ms. Usanovic carries her burden to show "there are questions of law or fact common to the class[,]" Fed. R. Civ. P. 23(a)(2), and a "capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation[,]" *Dukes*, 564 U.S. at 350 (emphasis in original). Commonality is therefore satisfied.

### 3. Typicality (Rule 23(a)(3))

To satisfy Rule 23(a)(3)'s typicality requirement, Ms. Usanovic must show that her "claims or defenses . . . are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "[T]he test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted).

Ms. Usanovic posits that she and putative class members were subject to the same treatment by eXp agents, namely that eXp "obtained their [Do Not Call] numbers from the same lead sources and called them with the same dialers for the same reason – to solicit real estate business." (MCC at 21.) Ms. Usanovic further represents that no affirmative defenses make her claims atypical. (*Id.*) In response, eXp asserts that it has a "unique defense as to [Ms. Usanovic]" because she (1) cannot establish the minimum requirements to show a TPCA violation and (2) has individual "credibility issues[.]" (MCC Resp. at 21.) The court again agrees with Ms. Usanovic for the reasons set forth below.

        *a. Ms. Usanovic's Individual TCPA Claim*

eXp asserts that it has a "unique defense" to Ms. Usanovic's TCPA claim because she "did not receive at least two telephone solicitations from any one real estate agent as required to establish a TCPA violation[.]" (*Id.*) Ms. Usanovic, however, may state a TCPA claim by showing that she received more than one violative call "by or *on behalf of*" eXp, even if the calls were placed by different eXp agents. 47 U.S.C. § 227(c)(5) (emphasis added); *Jones*, 887 F.3d at 448 (so stating); *see also Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. C25-0567TMC, 2026 WL 177598, at *1 (W.D. Wash. Jan. 22, 2026) (holding that defendant may be vicariously liable for TCPA violative calls where each call was by a different caller); (Compl. ¶¶ 25-38 (detailing the date, time, and eXp agent associated with each of the 13 calls to Ms. Usanovic on behalf of eXp). Thus,

the court rejects eXp's argument that a failure to show two or more calls from the same eXp agent defeats typicality.

### b. Ms. Usanovic's Individual Credibility Issues

Next, eXp asserts that it has a unique defense as to Ms. Usanovic because of her individual credibility issues. To defeat typicality, a class representative's credibility issues must be "directly relevant to the litigation[,]" *Cabrera v. Google LLC*, No. 5:11-CV-01263-EJD, 2023 WL 5279463, at *22 (N.D. Cal. Aug. 15, 2023) (internal quotation marks and citation omitted), and attacks on that credibility "must be so sharp as to jeopardize the interests of absent class members[,]" *Jammeh v. HNN Assocs., LLC*, No. C19-0620JLR, 2020 WL 5407864, at *14 (W.D. Wash. Sept. 9, 2020) (internal quotation marks and citation omitted). "Defeating typicality with credibility issues is an extremely difficult standard to satisfy and is usually limited to flagrant cases where putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *Wilcox v. Swapp*, 330 F.R.D. 584, 592 (E.D. Wash. 2019) (internal quotation marks omitted). Simply put, a credibility defense defeats typicality if it is likely to become the litigation's "focus." *Hirsch v. USHealth Advisors*, *LLC*, 337 F.R.D. 118, 133 (N.D. Tex. 2020) (compiling cases).

Here, eXp asserts that Ms. Usanovic is not typical of the class because she (1)  failed to immediately disclose ███████████████ during her deposition; (2) allegedly "misrepresented her ability to appear in person for her deposition[;]" and (3) litigated similar cases previously. (MCC Resp. at 21.) The court disagrees.

ORDER - 20

First, Ms. Usanovic's failure to immediately disclose ████████████████ ████████ lacks relevance to the litigation and is insufficient to defeat typicality. Although Ms. Usanovic represents that she "did not recall" ████████ during her deposition, she later amended her testimony and disclosed the relevant details ████ ████, including the nature of the charge, the date, the case number, the location of the event, and the subsequent case resolution. (*See* MCC Resp., Ex. 46 (1st Usanovic Depo.) (Dkt. # 69-38) at 12-13[4] (Errata Sheet).) The court is not persuaded by eXp's cited cases because they involve much more substantial histories of dishonesty regarding the class representative's criminal history. (*See* MCC Resp. at 21 (compiling cases); *see also* Errata Sheet (stating that Ms. Usanovic fully disclosed her ████████████████ during her deposition).)

Next, eXp asserts that typicality is defeated because Ms. Usanovic purportedly "misrepresented her ████████████████████████████████ [.]" (MCC Resp. at 7, 21.) Here, eXp takes issue with Ms. Usanovic expressing a preference to complete her deposition virtually ████████████████. (*See* 1st Usanovic Depo. at 10-15 (describing Ms. Usanovic's history ████████████████████).) eXp construes Ms. Usanovic's ability to ████████████████████████████ as proof that Ms. Usanovic was ████████████████████████████ ████████. (MCC Resp. at 21.) The court rejects this framing of the events in the record

---

[4] Here the court cites to the CM/ECF page numbers.

and, finding them immaterial to the litigation, again concludes that eXp fails to show that Ms. Usanovic has individual credibility issues that give rise to a unique defense.

Finally, eXp asserts that Ms. Usanovic's litigation history and past losses in similar cases provide it a unique defense. (*Id.*) The court again disagrees. Here, Ms. Usanovic allegedly received TCPA violative calls from other brokerage firms and decided to sue them for the same reasons that she is suing eXp. (*See* MCC Reply at 10-11, Ex. 29 (2nd Usanovic Depo.) (Dkt. # 71-1) at 64-65 (so stating).) eXp suggests that this litigation history renders Ms. Usanovic a professional plaintiff. (MCC Resp. at 21.) The court rejects this suggestion. That a would-be class representative filed two other TCPA cases contemporaneously does not a professional plaintiff make. *See Hirsch*, 337 F.R.D. at 133 (concluding that a plaintiff who "misrepresented his interest in Defendants' product solely to bring [the] case" coupled with his "records and behavior[,] make his status as a professional plaintiff unavoidable"). Ms. Usanovic's decision to assert her rights against other firms that potentially violated the TCPA does not injure any other potential class members, make her a focus of the litigation, or materially impact the case currently before the court. Therefore, the court concludes that Ms. Usanovic's litigation history does not provide eXp a unique defense.

Accordingly, because (1) Ms. Usanovic shows that she and putative class members suffered the same injury and (2) eXp fails to establish deficiencies as to Ms. Usanovic's individual TCPA claim or individual credibility that give rise to a unique defense, the court concludes that Ms. Usanovic is typical of the class. Rule 23(a)(3)'s requirement for typicality is therefore satisfied.

ORDER - 22

4.   Adequacy (Rule 23(a)(4))

Rule 23(a)(4) requires that Ms. Usanovic show that she will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy, the court must answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citation omitted). Ms. Usanovic asserts that (1) she has no such conflicts with proposed class members, (*see generally* MCC, Ex. 26 (3rd Usanovic Depo.) (Dkt. # 57-26) at 60-62 (describing her motivations); and (2) she has "capable counsel who have been appointed to represent classes in numerous class actions, including a prior TCPA case against eXp," (MCC at 22 (citing MCC, Ex. 27 (Kaufman Decl.) (Dkt. # 57-27), *id.*, Ex. 28 (Coleman Decl.) (Dkt. # 57-28))). eXp does not dispute adequacy. (*See generally* MCC Resp.) Adequacy is therefore satisfied.

**C.     Rule 23(b)(3) Is Satisfied.**

Because Ms. Usanovic seeks certification of a damages class, the court considers Rule 23(b)(3)'s requirements for predominance and superiority.

1.     Predominance

Rule 23(b)(3) requires that the common questions of law or fact predominate over the individual ones, an inquiry that is closely related to Rule 23(a)(2)'s assessment of commonality. Fed. R. Civ. P. 23(b)(3); *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("Rule 23(b)(3)'s predominance criterion is even more demanding than Rule

ORDER - 23

23(a).") (citation omitted). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Predominance, however, "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to class wide proof. What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members." *Amgen*, 568 U.S. at 469 (citation omitted) (emphasis in original).

Ms. Usanovic contends that common issues, as opposed to individualized ones, predominate this case. (MCC Reply at 4-8.) In response, eXp asserts that, because the court will need to consider individualized evidence for Ms. Usanovic to establish the fundamental elements of her TCPA claim, individualized issues can be said to predominate this case. (MCC Resp. at 9.) The court agrees with Ms. Usanovic.

First, the court previously explained in its discussion of commonality that all elements of Ms. Usanovic's TCPA claim can be established using common evidence. Second, because Rule 23(b)(3) does not require Ms. Usanovic to prove that each element of her claim is susceptible to class wide proof, eXp's objection is insufficient to defeat predominance. *See Amgen*, 568 U.S. at 469; *Tyson Foods*, 577 U.S. at 453 (stating that "the action may be considered proper under Rule 23(b)(3)" as long as "one or more of the central issues in the action are common to the class and can be said to predominate[.]") Consequently, the court concludes that the common questions of law or fact predominate over the individual ones. *True Health Chiropractic*, 896 F.3d at 931. Predominance is therefore satisfied.

ORDER - 24

2. <u>Superiority</u>

Rule 23(b)(3) also requires the court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy[,]" which in this case would mean individual actions by each putative class member.  Fed. R. Civ. P. 23(b)(3).  Where, as here, the "'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims[,]" the circumstances support "the need for class treatment."  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123-24 (9th Cir. 2017) ("If a class action is not superior, then individual actions must carry the day."); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir. 2001) (stating that the superiority requirement is generally satisfied when there are "multiple claims for relatively small individual sums").

eXp asserts that Ms. Usanovic cannot establish superiority because ascertaining the merits of each class member's claim will render a class action "unmanageable." (MCC Resp. at 22 (asserting that "thousands of mini-trials will be required").)  The court disagrees.  To dispense of this argument, the court need look no further than the multitude of district courts that have certified classes to adjudicate TCPA claims.  *See Bumpus*, 2022 WL 867256, at *9 ("There can be no doubt here that a class is the superior method of handling these TCPA claims. The recovery for each violation is relatively small, and it is not likely for class members to recover large amounts individually if they prevailed."); *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (finding that a class action is the "optimal" means of resolving TCPA cases and thus

"forcing corporations to internalize the social costs of their actions") (citation omitted); *Garvey v. Gaitan*, No. 2:23-CV-00920-APG-DJA, 2026 WL 734605, at *9 (D. Nev. Mar. 13, 2026) (holding that "if each plaintiff did bring their individual TCPA claim, it would impede judicial efficiency by requiring the courts to reinvent the wheel, in largely identical actions brought by many, many similarly situated plaintiffs.") (citation omitted). Therefore, in keeping with its sister district courts, the court concludes that a class is the superior method of handling these TCPA claims.  Superiority is therefore satisfied.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

ORDER - 26

## IV.   CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

(1) Ms. Usanovic's motion to certify class (Dkt. # 59) is GRANTED;

(2) Under Rule 23(b)(3), the following class is certified:

All persons in the United States who from May 10, 2019 through September 30, 2023 (1) received more than one call made by eXp Realty agents (2) using a Mojo or Vulcan7 dialer (3) as a result of being obtained as a lead from Mojo, Vulcan7, RedX, My Plus Leads, or All The Leads, (4) within any 12-month period, (5) where the person's telephone number had been on the [NDNCR] for at least thirty days;

(3) Plaintiff Ms. Usanovic is appointed as class representative;

(4) Under Rule 23(g), Kaufman PA, Del Castillo Law Group, LLC, Law Offices of Stefan Coleman PA, and Eric R. Draluck are appointed as class counsel;

(5) The court DIRECTS the Clerk to provisionally file this order under seal and ORDERS the parties to meet and confer regarding the need for redaction;

(6) The court further ORDERS the parties to jointly file a statement within ten (10) days of the date of this order to indicate any need for redaction.

Dated this 20th day of March, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 27